*New-Haven,*
July, 1839.

Yale
*v.*
Yale.

YALE *against* YALE.

On the failure of a partnership, an appropriation of the joint property, by one partner, to pay his individual debt, is fraudulent and void, as against the partnership creditors.

Where a bill of sale of a horse, the property of a partnership in failing circumstances, was given, by one partner, to *A*, to pay or secure the private debt of such partner, and another transfer of the same property was shortly afterwards made to *B*, a creditor of the partnership; it was held, that *B* was entitled to hold the property against *A*, unless *B* had assented to the sale to *A*, with knowledge that it was to be applied on a claim against one partner only.

A verdict will not be set aside as against evidence, unless the mistake of the jury is very manifest.

But where the question in an action of trover for a horse, brought by *A*, claiming under a bill of sale, against *B*, was, whether *A* accepted the bill of sale and agreed to the terms proposed; and it was proved by two witnesses, that when the bill of sale was left at *A's* house, she said nothing, but took the horse into her possession and used him occasionally, declaring, however, that she took him on trial, and not as her property; declaring afterwards, in repeated instances, that she had not indorsed the price upon her note, and never would; expressing also her determination not to take any horse, unless she could have another which she preferred; and the testimony of these witnesses was not contradicted, but corroborated, by other witnesses; it was held, that this testimony fully established the fact that *A* never consented to receive the horse in question on the terms proposed; and the jury having found otherwise, the verdict was set aside as against evidence.

THIS was an action of trover for a horse; tried at *New-Haven, October* term, 1838, before *Williams*, Ch. J.

On the trial, the plaintiff claimed the property in the horse under a bill of sale, dated *May* 31st, 1837, from *Edwin R. Yale*, a partner in the firm of *Yale & Henshaw*; and the defendant claimed the property under a subsequent bill of sale from *E. R. Yale*, to secure a debt due to him from *Yale & Henshaw*.

Before the bill of sale to the plaintiff, the horse was the property of *Yale & Henshaw*. Being deeply involved, they assigned their property, mostly to the defendant, who was their indorser and creditor to a large amount; but this horse was not included in the assignment. Shortly afterwards, it was transferred, by *Yale* alone, to the plaintiff, his mother, to pay or secure a debt due from him individually to her. The defendant afterwards received it, and converted it to his own use.

The defendant claimed, that the sale to the plaintiff was

New-Haven,
July, 1839.

Yale
*v.*
Yale.

fraudulent and void as against the creditors of *Yale & Henshaw*, because it was made upon the failure and consequent dissolution of the partnership, to pay or secure the private debt of one of them.

The plaintiff claimed, that the defendant, with a knowledge of the nature of this transaction, assented thereto, and could not now be permitted to treat it as void.

The court charged the jury, that after the failure of a company, one partner could not transfer the company property, to pay or secure his own private debts ; and as against company creditors, such a transaction would be void. But if the defendant, with a knowledge of the contract, had assented thereto, he could not be permitted now to claim it to be void as against him.

The following evidence was adduced on the trial.

The plaintiff, in support of her claim, exhibited a bill of sale of the horse, made and delivered to her, by *Edwin R. Yale*, on the morning after the failure of *Yale & Henshaw*.

*Cornelia Yale*, daughter of the plaintiff, testified, That her brother *Edwin* came to his mother's, with this bill of sale, saying, " I have brought a bill of *Frank*—[the horse in question]—I shall want to use him occasionally, as I shall have no horse."

Other witnesses for the plaintiff testified, that the plaintiff took the horse into her possession ; that it was kept in the barn where her former horse was kept, after her own barn was destroyed by fire ; that it was used by the defendant, after *Edwin's* failure ; that in three or four instances, she provided oats for it ; that she used it, from time to time, as she pleased ; that she once went with it as far as *Hartford* and *Springfield ;* that she let it once, and sent it twice to a blacksmith for the repair of the shoes ; that during the month of *June*, 1837, it had been called her horse, by the defendant and her son *Edwin;* and was so generally reputed.

It was admitted, that her son *Edwin* owed her, as his private debt, the sum of 2600 dollars, for which she had his private note secured by mortgage.

*Nathaniel Prudden* testified, That on the 10th of *June*, 1837, the plaintiff wished to exchange the horse *Frank* for one called *Lamson*, as he carried the chaise too hard. *Samuel Yale*, [the defendant] told her, *Frank* was hers, and

*Lamson* was his. She said, *Edwin* said she might have <span>New-Haven,</span>
*Lamson.* He said *Edwin* had nothing to do with it. *Frank* <span>July, 1839.</span>
was worth about 125 dollars. ·

Yale
*v.*
Yale.

The defendant, in support of his claim, that the contract
between *Edwin* and his mother was not completed or was
rescinded, and that, at all events, it was fraudulent and void as
against the creditors of *Yale & Henshaw*, proved, that the
horse was afterwards, by *Edwin*, with the assent of his moth-
er, transferred to him, the defendant, for a partnership debt;
and exhibited the following bill of sale : " *Meriden, July* 1st,
1837. *Samuel Yale*, bought of *Yale & Henshaw*, one bay
horse—$200. Received payment. *Yale & Henshaw.*" The
defendant then introduced *Edwin R. Yale* as a witness, who
testified, in answer to an inquiry as to his interest, that he felt
bound in honour, if he were ever able, to indemnify the defend-
ant for all the losses he might sustain by him : that on the
31st of *May*, 1837, he made the bill to his mother, and gave
it to her in good faith, and requested her to give the credit ;
that she made no reply ; that a few days afterwards, and at
various times, he asked her if she had given the credit for the
horse ; that she said, she had not, and should not, and asked
him if he was not willing she should have the *Lamson* horse ;
that he told her, it was not his to give ; that at a subsequent
time, he told her she must take *Frank,* and give him credit
for it ; that she then, and at all times, refused ; that on the
30th of *June*, she came to the store, and the witness again
asked her, if she had given him credit for the horse ; that she
said, she had not, and never would, and wholly declined ;
that he then said, " very well, I will take him back ;" and
that he then gave a bill of sale of the horse to the defendant :
that the horse was the property of the partnership, and the debt
due the defendant was due from the partnership ; that he
owed his mother another note, besides the one for 2600 dollars,
and should have been glad to have her keep the horse. On
cross-examination, he said, that he did not ask her for the bill
of sale he had given her, because he thought it of no conse-
quence ; that when he left it, he did not tell her on what note
to indorse it ; that she had had goods from the store, and owed
*Yale & Henshaw*, he thought, from 250 to 300 dollars.

*William C. Boon* testified, That he heard *Edwin R.
Yale* say, he had sold the horse *Frank,* to his mother, and for

some time it was considered as her horse; that it was kept by the defendant, in his barn, and used by her, when she wanted it; that about the 7th or 10th of *June*, the plaintiff came to the store with this horse in her chaise, and demanded the horse *Lamson;* said she liked him much the best, as he carried a chaise so much like her horse *Cherry ;* that she took hold of his bridle, and there was some contest between her and the defendant, but that this was near the store door, and the witness did not hear all that was said. He further testified, that on the 30th of *June*, she came again, and claimed that horse, insisting she would have it; that *Edwin* told her, she must have *Frank*—he had no other horse—*Frank* was young, and sound and good, and he had made a bill of sale of him to her; that she said she knew nothing about a bill of sale—he came over with a piece of paper, but she never agreed to it, at that price, and should not—she never had an idea of giving 200 dollars for him—he did not suit her, and she would not have him : that *Edwin* claimed, that she was to have him and indorse the price on the note : that he then asked the defendant if he would take the horse ; that he said he would ; that *Edwin* then told the plaintiff, she might be released from the bargain, the defendant would take *Frank*, and he would have no more difficulty about him; that she made no objection ; that after this, the defendant used *Frank* as his own, and the plaintiff did not use him ; that the horse *Frank* was then in the barn ; nothing was said about an exchange ; *Edwin* asked the plaintiff if she had indorsed 200 dollars on his note ? She said she had not and would not.

*Charles Linsley* testified, That he started, on the 7th of *June* to go peddling, with the *Lamson* horse; that the plaintiff came out and said, she must have him, and the witness should have *Frank*—her son said she should have him, in room of the other—as he carried a chaise so much easier she preferred him ; that the defendant said the horse was his, and directed the witness to put him before the wagon ; that he told the plaintiff to go off and mind her own concerns ; that she stepped up and took *Lamson* by the lines, on one side, and the defendant, the other side, and he ordered the witness to drive off, as the only way he could get rid of her.

*Thomas Tyler* testified, That on the 7th of *June*, he heard the plaintiff say she did not like *Frank*—she would not have

him—*Lamson* was hers, and she would have him—*Edwin* had told her she might; that this was his impression—he might be mistaken.

*Timothy Coe* testified, That he went to peddle for the defendant, between the 1st and 4th of *July*, 1837, and each was to furnish a horse; that he took the horse *Frank*, got him shod at *Middletown*, and kept him for six months.

*John Slain* testified, That he lived in the house with the plaintiff; that she, at first, was well satisfied with *Frank*; that afterwards, she complained that he carried the carriage hard, and she chose to have *Lamson*, and said, if she could not have him, she would have none.

The deposition of one *Hemingay* was introduced, which, however, contained nothing relied upon as material.

To impair *Edwin R. Yale's* testimony, the plaintiff exhibited an account, by which it appeared, that no more than 185 dollars was due to the store from her. Mr. *Fitzgerald* testified, that when *Heminway's* deposition was taken, *Edwin R. Yale* attended, and suggested questions to the counsel tending to disparage his mother, and exhibited the feelings of a party in the cause. A witness called by the defendant, testified, that he was carried over by *Edwin R. Yale*, who suggested questions to be put, but put none himself.

The jury gave a verdict for the plaintiff; and the defendant moved for a new trial for a verdict against evidence.

*Baldwin* and *Kimberly*, in support of the motion, contended, That the verdict was manifestly against the evidence in the cause. In support of this position, they contended,

1. That the plaintiff never bought the horse. She never assented to the terms. There was no application of the price; there was, indeed, no price agreed upon; no indorsement or discharge *pro tanto*. She, therefore, paid nothing. The contract was open; and no title passed.

2. That if there was a contract, it was afterwards rescinded, *viz.* on the 30th of *June*.

3. That if the horse was sold to the plaintiff, the defendant had no knowledge of the sale, and might well take an assignment from *Yale & Henshaw*, who owned the property and owed him a *bona fide* debt.

4. That *Yale & Henshaw* were in failing circumstances,

when *Edwin R. Yale* made his bill of sale to his mother, and as the debt due to her was his private debt, the sale, if perfected and not rescinded, and if the defendant was acquainted with the whole transaction, was fraudulent and void, as against him, a partnership creditor.

*B. Beach* and *R. I. Ingersoll*, contra, insisted, 1. That where the case turned upon the *credibility* of the witnesses, as this was peculiarly within the province of the jury, the court would seldom, if ever, disturb the verdict. *Lafflin* v. *Pomeroy*, 11 *Conn. Rep.* 449. Here, the credit of *E. R. Yale*, the principal witness, was impaired. He was hostile to the plaintiff; was under an honourary obligation to indemnify the defendant; he had the feelings of a party.

2. That the transfer to the plaintiff was made as *security ;* and it was not necessarry that any price should have been agreed upon, or any sum indorsed. She never agreed to part with this security, except in exchange for the other horse.

3. That there was no rescission of the contract. The writing was never taken up or cancelled. There was no return of the horse. *Roscoe on Ev.* 190. At most, there was only an agreement that the contract should be rescinded on terms.

4. That the jury had a right to infer, that the defendant was privy to the transaction. It was, therefore, too late for him to question the validity of the plaintiff's title.

SHERMAN, J. This court will not set aside a verdict as against evidence, unless the mistake of the jury is very manifest.

In this case, the judge charged, correctly, that, on failure of the firm, an appropriation of the joint property, by one partner, to pay his individual debt, would be fraudulent and void as against the partnership creditors.

That the horse in question was the property of the firm, and that they had become insolvent, was admitted. Whether the sale claimed by the plaintiff, if made at all, was void as being within this rule, was submitted, as a question of fact, to the jury.

As the only evidence that any debt at all was due to the plaintiff, proved it to be the debt of *Edwin R. Yale*, and not

*New-Haven,*
July, 1839.

Yale
*v.*
Yale.

of the co-partnership ; and as the testimony that the defendant was the creditor of the firm, and, as such, took a bill of sale of the horse, seems not to be questioned,—it was the duty of the jury to return a verdict for the defendant, unless they found that he had assented to the sale to the plaintiff, with knowledge that she was to apply it on a claim against one partner only. Of such knowledge there is no evidence. He knew that she received the horse to be applied upon a debt ; but there is no testimony conducing to prove, that he knew it was a debt against one only of the firm. There was, therefore, no testimony to shew, that he had waived his right, as a creditor, to avoid the sale. On this ground, the jury should have returned a verdict for the defendant.

But did the plaintiff ever agree to the terms of the contract, or accept the bill of sale ? She said nothing, when it was left at her house. She took the horse into her possession, and used him occasionally. This act was equivocal ; but would seem, if unaccompanied by other circumstances, to shew her assent to the contract. Her possession, however, was attended with declarations from time to time, shewing, that she took the horse on trial, and not as her property. Soon after he was left with her, instead of consenting to keep him, and indorse the price upon her note, she repeatedly declared, that she had not made the indorsement, and never would ; and expressed her determination not to take either horse, unless she could have the other, which she preferred. This refusal to accept the horse she continued to repeat, from time to time, until the sale was made to the defendant. The testimony of *Edwin R. Yale* and *William C. Boon* is not contradicted, but corroborated, by other witnesses. They fully prove, that the plaintiff never consented to receive the horse at the price required, but perseveringly rejected the proposal.

On both these grounds, we consider the verdict as against the evidence, and would advise a new trial.

In this opinion the other Judges concurred.

New trial to be granted.