### ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

### TRUE T. LOCKE vs. BENJAMIN F. LEWIS.

Middlesex.　Jan. 21, 1873; Jan. 13, 1874; Jan. 19, 1876. — Jan. 1, 1878.　SOULE, J., absent.

A sale by a partner, in payment of his own debt, of goods which are in fact goods of the partnership, but which the partnership has so entrusted to him as to enable him to deal with as his own, and to induce the public to believe to be his, and which the creditor receives in good faith and without notice that they are the goods of the partnership, is valid against the partnership and its creditors.

A. sold his interest in a partnership to B. and C., his former copartners, who formed a new firm, and gave A. in payment a promissory note signed B. & Son. When the note came due, A. received in payment property which had formed part of the assets of the old firm, but which then belonged to a new firm, doing business under the name of B. & Co., of which B. and C. were the general partners, and D. was a special partner. In an action of replevin brought by A. against an officer who attached the goods in his hands as the property of the new firm, there was evidence that A., who had taken a bill of sale from "B. & Co.," bought in good faith; that he had no knowledge of the existence of the new firm, except from a vague rumor, and never knew that it did business, or that D. was a partner. _Held_, that upon this evidence the jury would be warranted in finding for the plaintiff.

REPLEVIN of three carriages. The defendant, who was a deputy sheriff, justified under a writ of attachment of the carriages as the property of Isaiah L. Robinson, Daniel C. Robinson, Thomas Chase, Henry Parkinson and Stephen D. Greeley, copartners, doing business under the name and style of I. L. Robinson &

VOL. X.　　　　1

Co.  Trial in the Superior Court before *Brigham*, C. J., who made a report thereof, in substance as follows:

The plaintiff proved possession and use of the carriages, and put in evidence a bill for the carriages for the price of $582, having a printed heading (with the date and the plaintiff's name written in) as follows: "Nashua, N. H., Feb. 9, 1871.  Mr. T. T. Locke, Dr. to I. L. Robinson & Co., Carriage, Sleigh and Harness Manufacturers, Nos. 8 and 10 South Elm Street.  1. L. Robinson.  Daniel C. Robinson."  The bill concluded and was signed thus: " Received payment, I. L. Robinson & Co."  The plaintiff then rested his case.

The defendant called the plaintiff as a witness, who testified as follows: " For six months prior to September, 1870, I was a partner with I. L. Robinson and his son Daniel C. Robinson, at Nos. 8 and 10 South Elm Street, in Nashua, N. H., engaged in the carriage, sleigh and harness manufacture.  In September, 1870, this copartnership was dissolved, and a new firm formed by the two Robinsons under the style of I. L. Robinson & Son, and they continued the same business at the same place.  When I went out of the firm, I. L. Robinson & Son gave me a note for $575, for the unpaid balance of my interest in the old firm, and the new firm assumed the debts of the old firm.  At the time this note was given, the makers wanted me to take my pay in carriages, but I declined, as I wanted the money; but there was an understanding that the note was to be paid in carriages, the makers saying that there was a standing offer for me to take the carriages at any time.  In October, 1870, I lived at Pepperell in this Commonwealth, and was taken sick and confined to my house until early in February, 1871.  While I was sick, one Gaskin, of Nashua, called to see me on a friendly visit, during which he said to me that it was rumored in Nashua that my old partners had taken in Thomas Chase, Henry Parkinson and Stephen D. Greeley as special partners.  This was all I ever heard of this new firm, and I never knew anything about the new firm but this.  I never knew that they did business, and never knew that they were partners, and never saw them at Robinson's place of business.  After I recovered, in February, 1871, I went to Nashua and demanded payment of the note.  I found I. L. Robinson and his son doing business at the old place.

The Robinsons were not prepared to pay money, but offered to sell me carriages of value sufficient to pay the note. To this I acceded, took the bill put in evidence, and gave up my note to the Robinsons. The carriages were not removed by me until afterwards, part in May and one carriage in June following, I leaving them because I had no place to put them, and because I could not sell them then; they were to be delivered to me at any time I called for them. I thought two of the carriages were the same the old firm had on hand at the time I sold out to the Robinsons."

In July, 1871, and before the carriages were attached, Thomas Chase demanded the carriages of the plaintiff at Pepperell, in the name of the firm; and the plaintiff replied that the carriages were his, and that he had bought and paid for them in good faith. The plaintiff testified that he purchased the carriages in good faith, and that he had no knowledge, then or since, that the Robinsons were insolvent.

The defendant put in evidence the writ under which he justified, and the return thereon; the copartnership agreement which is printed in the margin,* and other documentary evidence, by

---

* Isaiah L. Robinson and Daniel C. Robinson, of Nashua, in the County of Hillsborough, State of New Hampshire, general partners, agree to form, and do hereby form, according to the provisions of the General Statutes of said state, a limited partnership with Thomas Chase and Henry Parkinson of said Nashua, and Stephen D. Greeley of Hudson, in said county, special partners, under the name or firm of I. L. Robinson & Co., in the manufacture of carriages of all kinds in all its branches, together with harnesses, general repairing of same, and blacksmithing, in the buildings of said Robinson on Elm Street in said Nashua.

The said general partners agree to furnish all the necessary buildings and shop room, to furnish all the stock and tools, pay all the expenses, and in short do all the business of the firm, and also furnish and hold during the continuance of this partnership thirty-five hundred dollars in stock in trade or its equivalent in cash or in cash credits.

And the said special partners agree to furnish the sum of five thousand dollars as capital towards the common stock, being $1666.66 each.

And it is further agreed that the said special partners shall receive, as their full share of the profits in the said business, ten per cent. of the said sum of five thousand dollars contributed by them annually, clear of all expenses whatever, which said percentage, being $500, shall be annually divided among the said special partners.

which it appeared that all the steps requisite to form a limited copartnership under the laws of New Hampshire had been complied with ; and the statutes of New Hampshire relating to limited partnerships. Gen. Sts. of N. H. *c.* 107.*

This was all the evidence ; and thereupon the judge ruled that the plaintiff could not recover, ordered a verdict for the defendant, and reported the evidence for the judgment of this court upon the question of the right of all of the general partners in the firm of I. L. Robinson & Co., consisting of all of the persons who constituted the firm of I. L. Robinson & Son, under the circumstances in evidence, to pay the indebtedness of the firm of I. L. Robinson & Son to the plaintiff by carriages which were a part of the stock in trade of the firm of I. L. Robinson & Co., as constituted by said copartnership agreement.

The case was argued in January, 1873, and reargued in January, 1874, and in January, 1876.

*T. H. Sweetser & F. A. Worcester*, for the plaintiff.

*D. S. Richardson & L. Wallace*, for the defendant.

GRAY, C. J. This case presents an important question of the law of partnership, which has been several times argued, and has received great consideration from the court. The apparent conflict in the cases cited at the bar, changes in the court, doubts entertained by some of the judges, the consequent necessity of

---

*It is further agreed that the said partnership shall commence on the 17th day of October, 1870, and terminate on the 31st day of December, 1871. Witness our hands the 15th day of October, 1870.*

Isaiah L. Robinson.
Daniel C. Robinson.
Thomas Chase.
Henry Parkinson.
Stephen D. Greeley.

* By this statute, limited partnerships may be formed by two or more persons, except for the purpose of banking or insurance, to consist of one or more general partners, who shall be jointly and severally responsible, and of special partners who shall contribute a specific sum in cash to the common stock, but shall not be personally liable for any debts of the partnership. Section 6 is as follows : " The general partners only shall transact the business in the name of the firm; and if the name of any special partner shall be used by such firm, with his consent or privity, or if he shall personally make any contract respecting the concerns of the partnership with any person except the general partners, he shall be liable as a general partner."

making a full examination of the authorities upon the subject, and the pressure of other duties, have delayed the judgment to the present time.

The case, briefly stated, is as follows : It is replevin of three carriages. In September, 1870, a copartnership previously existing between the plaintiff and Isaiah L. Robinson and his son Daniel C. Robinson, in the business of manufacturing carriages at Nashua in the State of New Hampshire, was dissolved, the plaintiff left the firm, and the Robinsons gave him their promissory note for the balance of his unpaid interest therein, and formed a new firm under the style of I. L. Robinson & Son, and continued the business at the same place. In October, 1870, the two Robinsons formed a limited partnership, under the laws of New Hampshire, under the name of I. L. Robinson & Co., with Chase, Parkinson and Greeley, in which the Robinsons were general partners and the other three were special partners. In February, 1871, the Robinsons sold the carriages in question to the plaintiff in payment of their note to him, and he gave the note up to them. The plaintiff's testimony tended to show that he bought the carriages in good faith, that he thought two of them were the same that the old firm had on hand when he sold out to the Robinsons, and that he did not know that the limited partnership existed or was carrying on business, or that any one but the Robinsons had any interest in the carriages sold to him. The defendant, a deputy sheriff, afterwards attached the carriages on mesne process against all the partners in the limited partnership. The report assumes that the carriages were part of the stock in trade of this partnership ; and the single question reserved for our determination is of the correctness of the ruling, under which a verdict was ordered for the defendant, and which was, in substance, that the sale by the two general partners, in payment of their own debt, of goods which were in fact goods of the partnership, but were not known to the creditor to be such, was void as against the partnership and its creditors.

The general partners were clothed not only with apparent, but with actual authority to sell the property in question. " The law treats each partner," says Mr. Justice Story in his Commentaries, " as possessing a dominion over the entirety of the prop-

erty, and not merely over his own share, and therefore as clothed with all the ordinary attributes of ownership. This doctrine indeed seems indispensable to the security and convenience of the public, as well as to the facility of transacting commercial business." Story Part. § 94. And he quotes, in this connection, from Chancellor Kent: "With respect to the power of each partner over the partnership property, it is settled that each one in ordinary cases, and in the absence of fraud on the part of the purchaser, has the complete *jus disponendi* of the whole partnership interests, and is considered to be the authorized agent of the firm." 3 Kent Com. 44. So Chief Justice Marshall says : " It will be readily conceded that a fraudulent sale, whether made by deed or otherwise, would pass nothing to a vendee concerned in the fraud. But, with this exception, I feel much difficulty in setting any other limits to the power of a partner, in disposing of the effects of the company, purchased for sale." *Anderson* v. *Tompkins*, 1 Brock. 456, 460.

As between the partners themselves, one partner has no right to bind the partnership, except within the scope of the business of the firm. He has no right to give a note or other obligation of the partnership, or to release a debt due to the partnership, or to appropriate property of the partnership, in payment of a private debt of his own, without the assent of his copartners. But their right to avoid the transaction, as against the creditor, depends upon the questions whether the latter had knowledge or notice of the true state of the case, whether there was fraud or negligence on his part, and whether the copartners held out the active partner as authorized to deal with the property as his own.

If one partner delivers a promissory note or bill of exchange of the partnership in payment of his private debt, the very form of the note or bill usually gives the creditor notice that it is a security of the partnership, and throws upon him the burden of showing that the other partners authorized or assented to what, without proof of such authority or assent, appears to be a misappropriation of the partnership funds. So if one partner releases a debt of the partnership in payment of a private debt of his own, the other party has like notice. So if property, applied by one partner in payment of his private debt, is known

by the creditor to belong to the partnership, such creditor cannot hold it against the partnership, without proof that the other partners authorized or ratified such appropriation.

But if the private creditor has no knowledge that the property belongs to the partnership, and the partnership has entrusted its property to one partner in such a manner as to enable him to deal with it as his own, and to induce the public to believe it to be his, then the other partners fall within the rule that when one of two innocent persons must suffer, that one must suffer who by his acts or conduct has afforded the means of committing the fraud. To hold a sale or a contract by the ostensible partners to be absolutely void, for abuse of authority by them, so as to confer no title and no rights upon a person dealing with them in good faith, within the apparent scope of their authority and right, with no knowledge of any abuse thereof, would be to apply to partners, having both title and authority ample for the purpose, a stricter and narrower rule than is applied to an ordinary agent exercising a bare authority without interest.

All the authorities agree that when a person, entrusted with goods as agent, sells them to one, who has no knowledge that he is agent, but is led to believe, from the manner in which he has been allowed to deal with the goods, that they are his, the other party to the transaction may set off against the principal a debt of the agent. *Rabone* v. *Williams*, 7 T. R. 360 note. *George* v. *Clagett*, 7 T. R. 359. *Semenza* v. *Brinsley*, 18 C. B. (N. S.) 467. *Turner* v. *Thomes*, L. R. 6 C. P. 610, 613. *Ex parte Dixon*, 4 Ch. D. 133. *Kelley* v *Munson*, 7 Mass. 319, 324. *Lime Rock Bank* v. *Plimpton*, 17 Pick. 159. *Calais Steamboat Co.* v. *Scudder*, 2 Black, 372. The same rule has been applied, in a series of English decisions, to partnerships, whether for general business or in a single adventure.

The earliest case reported was assumpsit by Stacey, Ross and others against Decy for goods sold and delivered. The plaintiffs were in partnership as grocers, but Ross appeared to the public to be the only person interested in the business. The defendant, having dealt with Ross for the partnership goods, for the price of which the action was brought, and having expended money on the private account of Ross to a greater amount, was allowed to rely on this by way of set-off; Lord Kenyon saying, " The

plaintiffs had subjected themselves to it, by holding out false colors to the world, by permitting Ross to appear as the sole owner;" or, according to another report, "As the defendant had a good defence by way of set-off as against Ross, and had been by the conduct of the plaintiffs led to believe that Ross was the only person he contracted with, they could not now pull off the mask and claim payment of debts supposed to be due to Ross alone, without allowing the parties the same advantages and equities in their defence that they would have had in actions brought by Ross." *Stacey* v. *Decy*, 2 Esp. 469 note; *S. C.* 7 T. R. 361 note. That decision has ever since been considered as establishing that a sale of partnership property by one partner might be set off against his private debt, if at the time of the sale he appeared, with the assent of his copartners, to be the sole owner of the property sold. 1 Lindl. Part. (3d ed.) 528, 531. *Gordon* v. *Ellis*, 2 C. B. 821, 829. *Lord* v. *Baldwin*, 6 Pick. 348, 352.

In another case, Wood and Payne were partners as grocers under the name of Wood & Payne, and also carried on under the same name the business of buying and selling cotton, in which Steele was a partner, but he was not known to the world as such, and had no interest in the grocery business. Wood and Payne, to secure a debt of their own to the plaintiff for groceries, indorsed in the partnership name and delivered to him a bill of exchange which they had received as cotton dealers in payment for cotton in which Steele had an interest. It was held that Steele was liable to the plaintiff upon this bill. *Swan* v. *Steele*, 7 East, 210; *S. C.* 3 Smith, 199. Upon the plaintiff's counsel stating the proposition, that the other partners were bound by one partner's misapplication of the partnership money or effects, "unless there is fraud," Lord Ellenborough interposed, " Unless there is collusion." 3 Smith, 201. And, the defendant's counsel having argued, " The only difference between this case and that of *Shirreff* v. *Wilks*, 1 East, 48, is that there the creditor, when he accepted the security from one of the partners for his particular debt, knew that it was part of the partnership funds," Lord Ellenborough said, " That makes all the difference." 7 East, 212.

In *Ex parte Gellar*, 1 Rose, 297, Sill & Co. entered into an agreement with Hutchinson to purchase a quantity of coffee, to

be shipped to a foreign market, on a joint adventure, under the management of Sill & Co. The coffee was bought and paid for by Sill & Co., and Hutchinson paid them for his proportion of it. The coffee was delivered by Sill & Co., for the purpose of being exported, to Gellar, who, without the knowledge of Hutchinson, and in ignorance of his interest in the coffee, advanced money upon it to Sill & Co., and charged Sill & Co. with the amount. The coffee being afterwards sold for less than the amount of the advance, Lord Eldon held that Hutchinson, as well as his copartners Sill & Co., was bound by the transaction, and liable for the balance, and said, " It is the consequence of a person suffering others to deal impliedly with his name under the general designation of a company."

In *Tupper* v. *Haythorne*, Gow, 135, by agreement between Tupper, doing business at Valencia in Spain, and Smith & Co., merchants in London, Tupper bought and paid for a large quantity of wool in Spain, and consigned it to Smith & Co. for sale on his and their joint account in equal moieties, and transmitted the bills of lading to them. Before Tupper had been reimbursed by Smith & Co. their proportion of the prime cost, Smith & Co., representing that the cargoes were their property, obtained advances, upon the security of the bills of lading from Haythorne & Co., who had no knowledge that Tupper had any interest in the cargoes or that he had paid the prime cost. Sir William Grant, M. R., held that Smith & Co., as partners, had a right to pledge the cargoes as against Tupper, their copartner, there being no evidence of collusion and fraud between Smith & Co. and Haythorne & Co.

So in *Raba* v. *Ryland*, Gow, 132, the two plaintiffs, merchants at Bordeaux, in France, bought clover seed for the joint account of themselves and Caumont in equal thirds, and shipped it to Caumont, who, upon receiving the bill of lading, lodged the same with the defendants, corn and seed factors in London, for the landing and sale of the seed, and afterwards procured from them an advance of money upon the seed, they not having any notice of any joint interest therein. Caumont having become bankrupt, the plaintiffs, who were his creditors to a larger amount than the value of the seed, made a demand upon the defendants for the seed, accompanied by an offer to pay freight, ware-

housing and other charges thereon, which being refused, they brought trover, and contended that Caumont was a mere factor or consignee as to the two thirds of the seed which were the shares of the plaintiffs, and had no right to pledge those shares. But Chief Justice Dallas held that Caumont, being jointly interested in the seed with the plaintiffs as a partner, was in that character possessed of the entirety, and had a clear right to sell the seed, or to borrow money on the security thereof until a sale could be effected, and that the defendants were entitled to a verdict. The Court of Common Pleas unanimously confirmed this opinion, and observed that the cases, in which it had been determined that the interests of partners ignorant of a pledge of property by their copartner were not bound, were either infected with fraud, or else the pledgee knew, or had the means of knowing, that the property was partnership property.

The cases of *Tupper* v. *Haythorne* and *Raba* v. *Ryland* were approved and followed by Chief Justice Abbott and his associates in the King's Bench. *Reid* v. *Hollinshead*, 4 B. & C. 867, 880; *S. C.* 7 D. & R. 444, 458.

In *Kendal* v. *Wood*, L. R. 6 Ex. 243, in the Exchequer Chamber, which was an action by one partner, Kendal, to recover back money paid by him, after a dissolution of the partnership, under a mistake of fact, to the defendants, who had received a like amount during the continuance of the partnership from the other partner, Woolnough, and had applied it to the payment of a private debt of the latter to them, Chief Justice Cockburn said, " The question that first arises is whether the defendants, at the time they received this money, or at the time they appropriated it to the satisfaction of Woolnough's debt, knew it was partnership money." And the Chief Justice, as well as Justices Blackburn and Montague Smith, treated it as clear that if the defendants did not know that the money received by them was money of the partnership, or if the plaintiff, by his conduct, had induced them to believe that his copartner was authorized to apply it to the payment of his debt, the action could not be maintained.

The case upon which the defendant principally relies is *Rogers* v. *Batchelor*, 12 Pet. 221. But nothing was adjudged

in that case, inconsistent with the views above stated. That was an action upon an obligation of Richards and Buckholts, copartners, in which the defendants claimed to set off two sums which the plaintiff had undertaken to apply in payment of a separate debt of Richards. The defendants introduced evidence that the plaintiff, at the time of settlement of the plaintiff's accounts with the partnership and the members thereof, admitted that the first of these sums was part of the proceeds of cotton belonging to the partnership; and some evidence tending to show that the plaintiff also knew that the other sum was paid out of the partnership funds. The court instructed the jury that if the first sum was the proceeds of cotton of the partnership, it was a legal set-off to a joint debt, and could not be applied to the individual debt of Richards, without proof that Buckholts was consulted and agreed to it; and that if the second sum was paid by the partnership or out of its effects, with the knowledge of the plaintiff, it was a legal set-off to a joint debt, and could not be applied to the private debt of either partner, without the consent of the other partner. The verdict was for the defendants, and the plaintiff's exceptions to the instructions were overruled by the Supreme Court.

In that case, the plaintiff's knowledge that the first sum was property of the partnership was not controverted at the trial or in the argument. This clearly appears from the omission of that question in the instruction as to the first sum, coupled with the distinct submission of the same question to the jury, as a fact to be found by them, in the instruction as to the second sum, (in regard to which the evidence of such knowledge was less clear,) and from the argument of the plaintiff's counsel in support of the exceptions, which assumed that the first sum was known to be property of the partnership, and only contended, as to that sum, that the copartner had the burden of proving that he did not consent to the appropriation. In short, the question of the legal effect of a transfer of partnership property by one partner, in payment of his private debt, to one who had no knowledge that it was partnership property, was not and could not be decided; because, as to one item, the fact of such knowledge was admitted, and, as to the other, it was found by the jury.

In delivering the opinion, Mr. Justice Story indeed says that it makes no difference, in such a case, that the separate creditor had no knowledge, at the time, of the fact of the fund being partnership property; and after discussing this position at some length, referring to several cases in England and in New York, (but not to any of those that we have already quoted,) and saying that the precise point "does not appear to have received any direct adjudication, for in all the cases above mentioned there was a known application of the funds or securities of the partnership to the payment of the separate debt," concludes that the true principle to be extracted from the authorities is, that if one partner applies the partnership property to the discharge of his own private debt, without the consent of his copartners, "their title to the property is not divested in favor of such separate creditor, whether he knew it to be partnership property or not."

With all deference to the opinion of so eminent a jurist, we are compelled to think that in this instance he overlooked the distinction between acts of one who undertakes to dispose of property in his possession without title or authority from the owner, and acts of one who, having authority, is guilty of some fraud or abuse in the mode of exercising it. In the former case, it is true that no title can pass; the act is absolutely void; and it is immaterial whether the other party acted in good faith, or had knowledge of the want of title or authority. In the latter case, the principal is bound to the extent of the apparent authority of his agent, notwithstanding any violation of duty or right as between the principal and the agent, unless the other party participated in or knew of the agent's breach of duty. This distinction is elementary in the law of agency, as has been pointed out in the fullest manner, by the same learned judge, when elucidating the principles of agency and partnership as a commentator. Story on Agency, §§ 443, 444. Story on Partnership, §§ 110, 111, 128, 131, 132.

In the Commentaries on Partnership, although that part of the opinion in *Rogers* v. *Batchelor* which relates to this subject is printed at length in a note, the text does not correspond to it, and the case is only referred to in support of these propositions 1st. That where one partner misapplies the funds or securities

or other effects of the partnership, the creditor, dealing with the partner and knowing the circumstances, will be deemed to act *malâ fide*, and in fraud of the partnership, and the transaction, by which the funds, securities and effects of the partnership have been so obtained, will be treated as a nullity; 2d. That as a general rule, where a note or security or fund of the firm has been taken in discharge of a separate debt of one partner, the burden of proof is on the holder or creditor to show circumstances sufficient to repel every presumption of fraud or collusion or misconduct or negligence, on his own part, unless indeed the circumstances, already in proof on the other side, repel such presumption; and 3d. That " if the securities or funds of the partnership are received in payment of the separate debt of one partner by his creditor, it will not be necessary for the partners to establish the fact that the creditor knew, at the time, that it was a misapplication of the securities or funds; for the very nature of such a transaction ought to put him upon further inquiry; and however *bonâ fide* his conduct may be, it is a case of negligence on his part, which will not entitle him to recover against the partnership." Story Part. §§ 132, 133. How the nature of the transaction can put him upon inquiry, or show negligence upon his part, if he does not know and has no means of knowing that the property transferred to him by one partner is partnership property, it is difficult to understand.

Upon a careful examination of the cases referred to in *Rogers v. Batchelor*, we cannot find the slightest intimation of an opinion that the title in the property or security would not pass to the private creditor, if he did not know it to belong to the partnership; but, on the contrary, we do find pointed suggestions that it would.

The only English cases there referred to are *Shirreff* v. *Wilks*, 1 East, 48, *Ridley* v. *Taylor*, 13 East, 175, *Green* v. *Deakin*, 2 Stark. 347, and *Ex parte Goulding*, cited from Collyer on Partnership, but also reported in 2 Gl. & Jam. 118, and 8 L. J. Ch. 19. They were all cases of a draft or acceptance of a partnership, given by one partner in payment of his private debt and in none of them was there any doubt that the creditor knew it to be a security of the partnership, except *Ridley* v. *Taylor*, in which Lord Ellenborough, after observing that upon the

peculiar circumstances of that case, which he recited, the part-
ner in possession of the security might reasonably be supposed,
by the party to whom it was given, to have been the proprietor
of it, so as to be authorized to deal with it as his own ; or that,
at any rate, the contrary did not appear, said, "in order to de-
prive the plaintiffs of the benefit of such a security, in a case
which admits of positive proof to the contrary, that the contrary
should appear ; and that either actual covin should be shown,
or that at least more pregnant evidence to induce that con-
clusion" (namely, covin; not, as construed in 12 Pet. 231,
"pregnant evidence that the act was unauthorized by the other
partners ;") "should have been given on the part of the de-
fendant, than is disclosed upon the face of this case." Upon the
question of the burden of proof, the decision in *Ridley* v. *Taylor*
has been qualified. *Chazournes* v. *Edwards*, 3 Pick. 5. *Lever-
son* v. *Lane*, 13 C. B. (N. S.) 278. But that does not affect
the bearing of the case upon the materiality of the question
whether the creditor knew the fund to be partnership property.

The other cases referred to by Mr. Justice Story are *Living-
ston* v. *Roosevelt*, 4 Johns. 251, *Dob* v. *Halsey*, 16 Johns. 34,
and *Evernghim* v. *Ensworth*, 7 Wend. 326. In *Livingston* v.
*Roosevelt*, the security given was clearly known to be a partner-
ship security, and the only question was whether the debt for
which it was given was a private or a partnership debt. In
*Dob* v. *Halsey*, the fact that the creditor knew the property
which he received to be partnership property was made a prin-
cipal ground of the decision ; and the court said that if the
partner had paid his private debt in money which he had taken
out of the partnership fund, such a payment would have been
valid, in the absence of all proof that the creditor knew that
the money of the firm had been thus misapplied. In *Evern-
ghim* v. *Ensworth*, the court found that the assignment was in-
tended by the partner as an appropriation of the partnership
property in satisfaction of his own individual debt, the creditor
"being fully apprised of all the circumstances ;" and referred
to *Dob* v. *Halsey* as holding that "where one partner delivers
partnership property to a third person, in payment of his private
debt, (the person who receives the property knowing that it
belonged to the firm,) the person so receiving it is liable to the

firm in an action for goods sold and delivered, to the full value of the property."

The *dictum* of Mr. Justice Story in *Rogers* v. *Batchelor* has been repeated in 3 Kent Com. 43, and other text-books, and in some judicial opinions; and the adjudication in *Buck* v. *Mosley*, 24 Miss. 170, seems to be in conformity with it. But most of the other cases, which have been supposed to affirm it, contained other elements.

In *Yale* v. *Yale*, 13 Conn. 185, no question was made but that the private creditor knew that the property sold to him was partnership property. In *Hester* v. *Lumpkin*, 4 Ala. 509, the transaction was held valid because the new firm was indebted to the old firm in a larger sum. In *Burwell* v. *Springfield*, 15 Ala. 273, the question whether the creditor knew that the property was partnership property was treated as material. *Daniel* v. *Daniel*, 9 B. Mon. 195, was the case of a gift by one partner of partnership property for no consideration. *Brewster* v. *Mott*, 4 Scam. 378, and *Minor* v. *Gaw*, 11 Sm. & Marsh. 322, were cases of set-off of partnership accounts against private debts.

In *French* v. *Lovejoy*, 12 N. H. 458, the assignment of partnership property by one partner was in payment of partnership debts, and was held valid to that extent; and the only statement which touches the question before us is a passing remark of Chief Justice Parker, who, after observing that the partner did not appear to have made the assignment for the purpose of paying his private debt, added, " nor could he lawfully have done so, to the prejudice of the creditors of the firm, had he attempted it." The same learned judge, in *Greeley* v. *Wyeth*, 10 N. H. 15, said that one partner might appropriate to his own use goods received in consideration of property or services of the partnership, without subjecting the party from whom he received it to an action in favor of the partnership ; that what disposition he made of the money, or of specific articles which he received for work and labor or materials, was a matter between him and his partner; and that the latter, by entering into partnership with him, trusted him thus far, and must look to the partnership account for remuneration.

In *Tanner* v. *Hall*, 1 Penn. St. 417, Chief Justice Gibson said, " It is not doubted that a partner cannot pay his separate debt

with the joint funds, though the creditor may not suspect a mis-application; for the wrong may be redressed without prejudice to any one." The reason is hardly satisfactory; (for, as suggested by Lord Ellenborough in *Swan* v. *Steele*, 7 East, 214, if the creditor had known the fact, he might have obtained other security for his demand;) and the case called for no such statement. It was an action on a promissory note made by one partner, and indorsed by the payees for his accommodation, to which he thereupon added the indorsement of the name of his firm, without his partner's knowledge, and had it discounted for his own benefit. The decision was finally put upon the ground that the form of the note sufficiently indicated that the firm's indorsement was for the separate accommodation of the partner, and threw upon the bank and the subsequent holder the burden of proving the authority of the partner to bind the partnership by the indorsement of its name; and, even as thus restricted, it can hardly be reconciled with later decisions of the same court. *Ihmsen* v. *Negley*, 25 Penn. St. 297. *Miller* v. *Consolidation Bank*, 48 Penn. St. 514.

In *Purdy* v. *Powers*, 6 Penn. St. 492, it was held that two partners could maintain an action at law for the price of the goods of the partnership, which had been settled for by one of the partners, without the knowledge of the other, by setting off a debt of his own against the purchaser. The decision was put upon two grounds: 1st. That in England, as shown by *Jones* v. *Yates*, 9 B. & C. 532, though no action at law could be maintained, yet the injured partner might have a remedy in equity against his partner and the person with whom the fraud was committed, and that in Pennsylvania equitable remedies were administered through the medium of common law forms; 2d. That the act of the fraudulent partner was simply void, and did not change the relative liabilities of the parties. But in *Jones* v. *Yates*, the creditor knew that the bills and money transferred to him came from the funds of the partnership without the knowledge of the other partner. 9 B. & C. 538. And the decision in *Purdy* v. *Powers* is wholly inconsistent with the law as settled in this Commonwealth. *Homer* v. *Wood*, 11 Cush. 62. *Farley* v *Lovell*, 103 Mass. 387.

In *Arnold* v. *Brown*, 24 Pick. 89, one partner made a sale of partnership effects, paying thereby a private debt, as well as partnership debts, though not to the purchaser. The other partner did not assent to or know of the misappropriation. A creditor of the partnership attached the property, and sought to avoid the sale, as in the case before us. The fraud of the partner, in the purpose for which he made the sale, and in the form in which he received the consideration, was exactly the same as if he had taken up his own note directly from the purchaser. But the court held that, as the payment of the separate debt was no part of the contract of the purchaser, and he did not in any way participate in the misappropriation, the sale could not be avoided.

In *Williams* v. *Brimhall*, 13 Gray, 462, in which a person, sued for the services of two partners in building a house, was not allowed to show that one of the partners had agreed to build the house in payment of a private debt of his own to the defendant, the facts and the reasons upon which the decision was made were thus summed up by Mr. Justice Bigelow: " The defendant knew of the copartnership, and of the nature of the business carried on by the firm, and that the work which was to be done for him was within the scope of that business. *Primâ facie*, it was work to be done by the copartnership, and the agreement to set off his private debt for the work to be performed by the firm was *primâ facie* a contract for the misappropriation of that which he knew belonged to the firm, to pay the separate debt of one of the copartners. As this was done without the knowledge or assent of the other copartner, it was evidence of a fraud on the firm, and as the defendant offered no evidence to rebut this *primâ facie* case which the plaintiffs had established, he failed to maintain his set-off."

This court has also held the knowledge of the creditor to be an essential element in cases of promissory notes of a partnership, given by one partner for his private benefit, and which, being between the original parties to the transaction, were not affected by the rule of the law merchant which protects commercial paper in circulation. *Eastman* v. *Cooper*, 15 Pick. 276, 290. *Hayward* v. *French*, 12 Gray, 453. *Warren* v. *French*, 6 Allen, 317.

Participation or knowledge on the part of the purchaser or creditor cannot be material upon the question whether a sale or a contract is absolutely void for want of right or capacity to make it. The constant reference to this element, therefore, in the cases in England, in New York and in this Commonwealth marks the character of. the invalidity to be established.

We would not be understood to affirm that the mere belief of the separate creditor that the property which he receives does not belong to the partnership will of itself be sufficient to. entitle him to hold it, if there has been nothing in the acts or conduct of the other partners to induce the belief that the partners with whom he dealt were the sole owners. *Chazournes* v. *Edwards*, 3 Pick. 11. *Gordon* y. *Ellis*, 2 C. B. 825, 829.

But the evidence before us would warrant a jury in finding, not only that the plaintiff acted in good faith, but that the active and ostensible partners had been held out as the sole owners of the property. The debt from the Robinsons to the plaintiff was for the interest which he had sold out to them in the assets of the former partnership between them. There was evidence tending to show that the property which he took in payment of that debt had formed part of those assets; that he bought it in good faith from the Robinsons, who were carrying on business at the old stand; that he had no knowledge of the existence of any other partnership, except from a vague rumor, and never knew that it did business, or that Chase, Parkinson and Greeley were partners therein, or saw them at the place of business; and that the bill of the goods, which the Robinsons gave him, was in the name of I. L. Robinson & Co. (which did not disclose that any other person was interested) and contained the names of the two Robinsons, and of no others, as partners therein.

The fact, that the partners who did not concur in the sale to the plaintiff were special partners in a limited partnership, gave them or their creditors no peculiar rights as against him. Although they were to receive, as their full share of the profits of the partnership, only a certain rate of interest upon the sums contributed by them to the capital, we assume that they are to be treated as jointly interested with the general partners in the partnership stock. And their abstinence from participation, in fact or in name, in the transaction of the business of the part-

nership, was made essential, by the statute under which the partnership was formed, to their exemption from liability for debts of the partnership. But while the statute, if its conditions are complied with, shields them from being charged, as general partners, upon debts contracted by the partnership, it does not give them any greater rights than they would, if they had been general partners and liable as such, have had to avoid sales of goods of the partnership, which, by their assent, and for their protection and benefit, the ostensible partners had been enabled to deal with as apparently their own property.

For these reasons, we are of opinion that the jury should have been instructed that if the plaintiff, by the manner in which the general partners dealt, and had been allowed by the special partners to deal, with the property sold to him, was induced to believe that it was the property of the general partners only, and, acting on such belief, bought it in good faith, and with no notice or knowledge that the special partners, or any other person than the general partners, had any interest therein, he was entitled to maintain this action.                    *Verdict set aside.*