THE CHARLOTTE IRON WORKS, RESPONDENT, *v.* THE AMERICAN EXCHANGE NATIONAL BANK OF NEW YORK, APPELLANT, IMPLEADED WITH HOBART F. ATKINSON, RECEIVER OF THE CITY BANK OF ROCHESTER.

*Deposit of a draft for collection — when one receiving it in good faith, from the person with whom it was deposited, may hold it as against the true owner.*

The plaintiff, a domestic corporation, doing business at Rochester, held a draft for $6,500, accepted by one Dunning, payable December 19, 1882, at the National Exchange Bank of Auburn. The plaintiff sent the draft, several days before its maturity, to the City Bank of Rochester, where it kept an account, stating that it was sent for collection and directing that the proceeds be credited to its account. On December ninth the City Bank sent the draft

to the Auburn bank, where it was payable, with directions to remit the proceeds when collected to the defendant, a bank doing business in New York, to be placed by the latter to the credit of the City Bank. On December nineteen the bank at Auburn charged the amount of the draft to Dunning, drew its own draft on a New York bank to the order of the defendant's cashier for the amount due, and sent the same to it by mail, stating that it was sent for the credit of the City Bank. The draft was paid on the next day and credited by the defendant to the account of the City Bank which was then indebted to it in an amount exceeding that of the draft. The City Bank was insolvent on December nineteenth, and its doors were closed at three o'clock in the afternoon of that day:

*Held*, that as it appeared that the defendant had received the draft and applied the amount thereof in the payment of a debt due from the City Bank to it, in good faith, and without notice of the source from which the money was derived, and without notice of the insolvency of the City Bank, it was entitled to retain the money so received and could not be compelled to account to the plaintiff therefor.

APPEAL from a judgment, entered upon the report of a referee directing a judgment in the plaintiff's favor for the sum of $7,013.23.

The plaintiff is a domestic corporation organized under the laws of the State of New York, located and doing business near the city of Rochester. The plaintiff held an acceptance of J. W. Dunning, its debtor, for the sum of $6,500, payable on the 19th of December, 1882, at the National Exchange Bank of Auburn. The plaintiff was the drawer of the draft on which the acceptance was written. Several days before the draft matured the plaintiff inclosed the draft in a letter to the City Bank of Rochester, where it had, and kept, an account, stating that the same was for collection and to credit to its account when paid. On the ninth of December the City Bank forwarded the draft to the bank at Auburn where the same was payable, with directions to remit the proceeds when collected to the American Exchange National Bank, the defendant, to be placed to its credit and to advise the City Bank of Rochester.

On the 19th of December, 1882, the day the draft matured, Dunning had an account at the National Exchange Bank of Auburn, and that bank charged the amount of the draft to Dunning's account, and issued its own draft on the National Park Bank of New York, payable to the order of Dumont Clark, cashier of the National American Exchange Bank, the defendant, for $6,496.75, and sent the same by mail on the evening of that day, addressed to

the last named bank, stating that the draft was sent for the credit of the City Bank of Rochester, as requested by it. On the same day it advised the City Bank of Rochester, by letter, that Dunning's acceptance was paid and that the proceeds had been sent to the American Exchange National Bank, to be placed to its credit as requested. The defendant, before nine and one-half o'clock on the morning of December the twentieth, received the draft on the National Park Bank and the same was on that day paid and the avails credited to the account of the City Bank of Rochester. The City Bank of Rochester, had no instructions or authority from the plaintiff, in relation to said draft or its proceeds, except those which have been stated, and on the day the draft matured the plaintiff had standing to its credit on the books of the City Bank of Rochester over $10,000, and that bank was a debtor to the plaintiff in that sum. On the nineteenth day of December the City Bank of Rochester was insolvent, and at three o'clock in the afternoon of that day closed its doors and thereafter did not resume business. On the next day an action was commenced at the instance of the attorney general, and a receiver appointed of its effects on the twenty-sixth of December. On the morning of December the twenty-first the plaintiff, by telegram, notified the defendant that the draft belonged to it, and was a collection for its account. The defendant, at the time it received, collected and credited the proceeds of the draft on the Park Bank, had no notice or knowledge of the source or origin of the said draft, except as is contained in the letter of advice inclosing the same.

On the trial the defendant offered to prove that it received, from the National Exchange Bank of Auburn, the draft, before it had any notice or knowledge of the failure of the City Bank of Rochester, and in the ordinary course of business, credited the amount thereof to the City Bank of Rochester; that at the same time the said defendant bank had no notice of the source from which the said money was derived; that the draft so credited was paid by the National Park Bank in the usual course of business, on the same day, through the clearing house; that at the time when the said draft was received and credited, the City Bank of Rochester was indebted to the defendant bank in a much larger amount than the amount of said draft; that the said draft was credited and

applied on account of said indebtedness, and after such application the City Bank of Rochester remained a debtor to the defendant bank in a large sum of money.

The facts offered to be proved were set out in the defendant's answer. This offer of proof was rejected and the defendant excepted.

*W.ªF. Coggswell,* for the appellant.

*M. W. Cook,* for the respondent.

BARKER, J.:

The legal questions presented arise on the ruling of the referee rejecting the evidence offered. In our consideration the facts which such evidence would have established, constitute a perfect defense. The act of the plaintiff in placing the Dunning acceptance in the hands of the City Bank of Rochester for collection gave it an apparent title to the draft and to the moneys collected thereon. The evidence given on the trial is not set forth in full in the case, and it was stipulated on the settlement that the evidence tended to prove the facts found by the referee. By the pleadings and the facts found by the referee we are made to understand that nothing appeared on the face of the draft indicating that the City Bank received the draft for collection. On presentation the acceptor paid the draft and the same was given up and canceled.

All persons dealing with the City Bank in the due course of business and in good faith, acting upon the assumption that it was the owner of the draft and its proceeds, and being ignorant that it was the mere agent of the plaintiff, the owner, are protected by well settled principles. By the several transactions had the Dunning acceptance was paid up in cash. There was no longer in existence any paper representing the plaintiff's debt against Dunning. In legal effect the debt had been paid in money to the defendant. This money came to the defendant from one of its customers, who was its debtor, in the due course of business, with directions to credit the same on its overdrawn account. The transaction is the same and the defendant's title to the money as good as if Dunning had paid the draft in currency and the Auburn Bank had remitted the identical moneys to the defendant in compliance with the order

given to it by the City Bank of Rochester. The intermediate transaction, which was adopted by the bank in Auburn, to secure a transmission of the proceeds to the defendant was for its own convenience and was the customary mode of making remittances between those places. The collection through the clearing-house was, in legal effect, the same as if the defendant had sent the draft for payment by its own messenger, and at the counter of the Park Bank had received the currency and returned it to the defendant, and the amount credited to the City Bank of Rochester as cash paid on its indebtedness. (*Indig* v. *National City Bank*, 80 N. Y., 100; *First Nat. Bank* v. *Leach*, 52 id., 350; *Justh* v. *Bank*, 56 id., 480; *Turner* v. *The Bank of Fox Lake*, 3 Keyes, 425.)

As a general rule where the trustee or agent has converted the subject of his trust or agency into money, and pays the same in the due course of business, in discharge of his own indebtedness, to one ignorant of the nature of his title, the payee acquires a perfect and indefeasible one as against the real owner. In such a case the right to follow the money by the principal is gone.

In *Stephens* v. *The Board of Education* (79 N. Y., 183) the court, in commenting upon the facts of that case, said: " It is said that the case is to be governed by the doctrine established in this State that an antecedent debt is not such a consideration as will cut off the equities of third parties, in respect to negotiable securities obtained by fraud. But no case has been referred to where this doctrine has been applied to money received in good faith in payment of a debt. It is absolutely necessary for practical business transactions, that the payee of money in due course of business shall not be put upon inquiry at his peril as to the title of the payor. Money has no ear mark. The purchaser of a chattel or a chose in action, may, by inquiry, in most cases, ascertain the right of the person from whom he takes the title. But it is generally impracticable to trace the source from which the possessor of money has derived it. It would introduce great confusion into commercial dealings if the creditor who receives money in payment of a debt is subject to a risk of accounting therefor to a third person, who may be able to show that the debtor obtained it from him by felony or fraud. The law wisely, from considerations of public policy and convenience, and to give security and certainty to business transactions,

adjudges that the possession of money vests the title in the holder as to third persons dealing with him and receiving it in the due course of business and in good faith upon a valid consideration."

It was said by Lord MANSFIELD, in *Miller* v. *Race* (1 Burr, 452): "It (money) never shall be followed into the hands of a person who *bona fide* took it in the course of currency and in the way of his business."

In the case of *Stephens* v. *The Board of Education*, the facts were, that one Gill owed the defendant, the Board of Education, a debt. He procured a loan of money from the plaintiff by means of a flagrant fraud, practiced on him and placed the same to his own credit in the bank where he kept his account. He then drew a check against his account in the defendant's favor for the amount of his debt, and the same was paid. The plaintiff discovered the fraud practiced on him and brought an action to recover the money from the defendant, and the defendant's title to the money was sustained, the court holding that the action would not lie ; that money obtained by fraud or felony cannot be followed by the true owner into the hands of one who has received it *bona fide* and for valuable consideration in the due course of business.

The case before us is in all respects parallel to *Wood* v. *Boylston National Bank* (129 Mass., 358). There the plaintiff was the owner of a note, the avails of which he sought to recover of the defendant. It was a negotiable note, indorsed in blank by the payee. Before it fell due the plaintiff delivered it to Jackson, an attorney-at-law, for collection, and he deposited it without his own indorsement to the defendant bank, and at the time of its maturity and payment Jackson was owing the bank, on account of advances and otherwise, more than the amount of the note. Nothing was said when it was deposited or before its payment as to Jackson's title or relation to the note, and no advance of money was made to him on account thereof. It was held that the plaintiff could not follow the proceeds in the hands of the defendant, and a recovery was defeated.

We fail to discover in the cases cited by the respondent's counsel any rule of law hostile to those which we have stated. In *McBride* v. *The Farmers' Bank* (26 N. Y., 450), the notes which came to the hands of the defendant and were paid to it by the maker after maturity, were sent to it by the Canal Bank, who had received

them for collection from the owner, and forwarded them to the defendant for collection, with a request when paid to remit the proceeds. The defendant had no information that the Canal Bank was not the owner of the notes, but it did not discount the notes nor make any advances upon the credit of the same. Before the notes matured the defendant was fully advised that the Canal Bank had no title, and that the plaintiff was the owner, and when the notes were paid they were aware that the Canal Bank, who forwarded the notes for collection, had no title to the same.

Nor are the cases of the *Grand Trunk Railway* v. *Edwards* (56 Barb., 408); *Ely* v. *Norton* (3 Keyes, 397) in point, for the reason, that, in each of these cases the payee of the money had notice that the payor had no title, and that the same was held by him in a fiduciary capacity.

There is another class of cases which, in principle, sustain the defendant's position, that it acquired a good title to the money. The rule to be gathered from these cases, as it has been stated in some of them, is this : where a factor dealing for a principal, but concealing that principal, deals in his own name, the person contracting with him has a right to consider him to all intents and purposes as the principal; and though the real principal may appear and bring an action upon that contract against the purchaser of goods, yet that purchaser may set off any claim he may have against the factor in answer to the demand of the principal. (*George* v. *Claget*, 7 T. R. 355 ; 2 Smith's Leading Cases, p. 77 ; *Hogan* v. *Shorb*, 24 Wend., 458; *Keator* v. *Smith*, 13 N. Y. Dig., 64 [Third Dept.] ; *Locke* v. *Lewis*, 124 Mass., 1 ; Story on Bailments, § 390 ; *Wright* v. *Cabot*, 89 N. Y., 574.)

The City Bank of Rochester, when it gave instructions that the avails of the collection should be remitted to the defendant, intended and knew that, in the regular course of business, it would be applied upon its account and that the remittance, in whatever form it was made, would be in currency or its equivalent.

There is another circumstance which indicates that the plaintiff did not expect the funds in which the payment might be made would come into its actual possession, for its instructions to the City Bank were, to credit it with the proceeds, and in whatever form the payment might be made to the bank it would be used by it and the

plaintiff credited with the avails, which was, in effect, an authorization to use the cash proceeds. The insolvency of the City Bank of Rochester has nothing to do with the question, as there is no pretense that knowledge of it came to the defendant until after it had collected the draft on the Park Bank and applied the proceeds.

Judgment set aside. New trial ordered before another referee, with costs to abide the event.

SMITH, P. J., BRADLEY and HAIGHT, JJ., concurred.

Judgment reversed and new trial ordered before another referee, costs to abide event.