Mr. Justice NELSON.
This is an appeal from a decree of the Circuit Court of the United States, for the District of Maine.
The bill was filed in the Court below by Scudder, the administrator of John Van Pelt, deceased, against the Steamboat Company, claiming title to thirteen-twentieths of-the Steamer Adelaide, as belonging to the estate of his intestate, and a consequence of this interest to the complainant, an account of her earnings, &c.
The respondent set up, by way of defense, title to the whole of the steamer as bona fide purchasers and for full value from one William W. Vanderbilt, in the city of New York.
The case discloses that John Van Pelt, a resident of California, in the spring of 1858, employed Vanderbilt, an engineer and constructor of steamers, to visit the city of New York and there enter into .contracts, and superintend the construction of the steamer in question, he, Van Pelt, furnishing the necessary means for the purpose. The contracts were to be made in the name of Vanderbilt, the builders’ certificate to be taken and 'the enrolment, at the custom-house, made in his name as owner. This instruction was given by Va.n Pelt to Vanderbilt for the avowed purpose;of concealing his own name in the construction of the vessel, as, for reasons not material to state, he did not wish it to be known in the city of New York, or in California, that he was interested in 1 er. He was very specific and urgent on this point; for, in one of his last letters to Vanderbilt, written at his request, 18th September, 1853, (he died on the 29th,) he says, “You are not to know that he (Van Pelt) has any interest in the boat; and, that you must be more particular in talking and writing about her and her destination.”
The boat was built in New York in pursuance of this, authority‘and these instructions. The contracts were entered *374 into for the hull and engines-in July, 1858; for joiner-work painting, &c., at a later date. All made in the name of Vr.nderbilt. . She was finished in September, 1854. In the latter part of August of the same year, two agents of the respondents visited the city of New York for the purpose of buying a steamboat to be put on their line of steamers in the place of one disabled, and saw or had seen the steamer in question advertised in the daily city papers for sale. And, on application to Vanderbilt, and after examination of the vessel and the usual negotiations as to price, on the third of August the purchase .was made for the sum of $88,000 — $5,000 paid down, $15,000 •28d August) and the balance 9th September. Vanderbilt, after having .procured the usual builder’s certificate, to which he was entitled as contractor for the building of the vessel, had her enrolled in his own name as owner; and then, on the 9th September, executed a bill of sale to the purchasers, under whom the respondents claim title.
Upon this simple statement of the case, it is not to be doubted but that the legal title to this vessel passed to the purchasers; for, although as between Vanderbilt and Van Pelt, his principal, or the estate of Van Pelt, the legal title could not avail, beyond a lien for his services or for any advances; yet, as it respects third persons, who have bought in good faith and fora valuable consideration, the rule is different. The question then arises between two innocent parties, and the equity of the case turns against the party who has enabled his agent or any other person to hold himself forth to the world as having not only possession, but the usual documentary evidence of property in the article, 3 B. & Cr., 38; 4 D. & A., S. C; 8 Cow., 238.
The case furnishes a very strong illustration of this principle. All the indicia of property in this vessel in Vanderbilt existed from no fault of his, for he was clothed with it by the express authority of the principal. Van Pelt, therefore, took upon him- ' self knowingly the responsibility of vesting the property of the vessel in Vanderbilt, as he must have known that it was in his power to deal with it as owner. Besides, he was extensively engaged in the business of steamboats in the waters of California. *375 and doubtless understood, in point of fact, tbe responsibility he wan assuming. Yan Pelt' died in September, 1853, while this vessel was under contract for construction. The event, however, did not interfere with it, as his legal representatives continued the arrangement the same after as before — furnishing the necessary funds, and carrying on the work till the vessel was finished. They took the place of Yan Pelt.
In order to weaken this view of the case, it is said that Yan Pelt, before his death, changed the agency of Yanderbilt by the appointment of one D. P. Yail. If this were conceded, unless it had the effect to change the apparent ownership of the vessel in Yanderbilt, the circumstances would be immaterial. No secret arrangements between the parties could affect third persons But there was no change in the instructions to Yanderbilt of any importance in the case. The authority of Yail was confined to the furnishing of the vessel after she was finished, and to tbe taking charge of her as Captain in carrying her to California, The funds furnished by the owners passed through his hands 1o Yanderbilt. In one of the last letters written by Yan Pelt, 1st September, 1853, to Yanderbilt, before his death, he says-speaking of the vessel — “ I wish the bill of sale to be made for D. P. Yail, ten-twentieths; R. Chenery, four-twentieths; R. M, Jessup, three-twentieths; W. W. Yanderbilt, two-twentieths; and Frank Johnson, one-twentieth.”
■ These instructions to Yanderbilt related to his disposition of the vessel after her completion, the names and shares representing the owners, and their interest. The ten-twentieths in Yail’s name represented the interest of Yan Pelt, and was placed there to conceal his interest agreeably to his original purpose.
These instructions, whatever may have been their effect upon the parties concerned, had none as it respected the apparent relátion of Yanderbilt to the vessel. He remained in possession of her and of all the documentary evidence of property, and was thus held out to the world as the legal owner. Indeed, no change '\v&,o contemplated in this letter till the boat was finished. Yan derbilt then was tó give a bill of sale to the persons-named, Yan P* ít’s interest still to be concealed. We lay out of the ease, *376 therefore, all the evidence in respect to the connection of Tail with the construction of the vessel, as in no way affecting the ostensible ownership of her by Vanderbilt.
It is insisted, however, that, assuming the respondents obtained the legal title of the vessel by the purchase and bill, of sale of Vanderbilt, still the title was defective, inasmuch as they are chargeable with notice of the equitable interest of the estate of Van Pelt. This, in our view of the case, is the only serious question in it.
It is admitted that the respondents paid the full value of the vessel at the time of the purchase — $88,000. They had no motive, therefore, to make the purchase of a vessel of doubtful or defective title. • So far as regards the contract of purchase itself, its terms and conditions, there is nothing inconsistent with the most entire good faith. If the vessel had been purchased under her value, or the mode of payment had been prejudicial to the vendor, or any special gain had been achieved by the purchasers, the Court would necessarily approach this question of notice with very different impressions from those proper in this ca'se. Down to this point, the evidence of good faith is undeniable, and must be overcome by the proofs of the adverse party. We go one step further; with such evidence of good faith from the terms and conditions of the contract itself, the proofs to overcome it should be more full and direct, more unequivocal and certain than in the case of a like impeachment of a hard and unequal bargain.
Before we enter upon the proofs on this point, it may be well to ascertain, with some degree of exactness, the precise practical question involved in this charge of notice.
The estate of Van Pelt claims thirteen-twentieths of the vessel, on the ground that the funds of Van Pelt in his lifetime, ' and of his estate since his death, were furnished to the extent of this interest to build the vessel. The claim is for a latent equitable interest resting in the heirs or personal representatives of the intestate. The remaining interests in the vessel are not in question It is admitted the other owners authorized the sale, and have eceived their share of the purchase money The *377 case, therefore, is brought down to the single question, are the respondents chargeable with notice of this outstanding equitable interest in the vessel at the time of the. purchase?
Our first remark is, that all- the parties concerned in or connected with the purchase deny natice, and testify to the good faith of the transaction. Vanderbilt and Vail, who were concerned in the sale, and Deming and Todd in the purchase — four persons, each of unimpeachable characters.
This position is sought to be impaired by a critical examination of the testimony of Vanderbilt and Vail, who were examined on interrogatories, and isolated answers are seized on for the purpose of weakening the general denial, and establishing the fact of notice. We shall not go into the detail, but content our-self. by stating that we have very diligently examined all the answers of these witnesses relied on in connection with the whole of their testimony on the subject, and they come to this — that the purchasers were advised there were parties in California who had .advanced money towards building the vessel; that she was originally intended for employment in the waters of that State ; that this purpose had been changed; and that they wished the boat sold, and that they, Vanderbilt and Vail, were authorized to sell her. Now this taken together furnishes neither notice of the equity of the estate of Van Pelt in the vessel to the purchasers, nor is it sufficient even to put them on inquiry. It must be recollected that the burden of proof rests upon the complainant. Taking the whole statement as true and entitled to belief, there is nothing in it to , excite th.e apprehension? of even a prudent business man; for at the same time the purchasers were advised of advances or interests of persons in California, they were advised they had authorized the sale. One part of this statement was as much entitled to belief as the other. The case falls within the'principle stated by Lord Lyndhurstin Jones vs. Smith, (1 Phillip, Ch. R., 244).
. It must be remembered that this was not a purchase under a power of attorney, and hence a necessity to look to the' power and see to the authority.
The purchase was from the apparent owner, possessed of all *378 the indicia of property, and the question is, whether this evidence of ownership is overcome by notice of an outstanding equitable interest in the vessel. The affirmative rests with the party charging notice, and the facts brought home to the knowledge of the purchaser to charge him with notice must be taken together, as the question is, what effect the evidence as a whole should have produced on his mind. Nor should it be forgotten that the persons who had advanced money to Vanderbilt had advanced it for the building of a vessel in his name and as his property.
The same observations are applicable to the testimony of Butler, a witness, who says, there appeared to be a question between the parties regarding the validity of the title to the boat; that Vanderbilt and Vail assured the purchasers that, independent of being builders of the boat, they were duly authorized by all the parties that might have any interest in her in California to sell her on the best terms. This witness does not profess to give the words of the parties, but only the substance of the conversation as he then recollected it.
The testimony of Spencer, who went to New York to become steward on the Adelaide, to the 12th interrogatory, says, “I understood from both Capt. Vanderbilt and Mr. Demming that John Van Pelt was part owner of the Adelaide;” and to the ' 15th, he answered, “ they (Vanderbilt and Demming) both told me that the Adelaide was built to go to California; Captain Vanderbilt said they had entered into a combination out there, and the Adelaide was not needed; that they had boats enough out there to do all the business, and that this was the reason why they sold the Adelaide.”
Now, the fact that the. boat was built for parties in California, and that they had come to the conclusion she .was not needed there, and wished her sold, did not necessarily (detract from the right or authority of Vanderbilt to sell, who was invested with the legal title. If she was intended for sale, the presumption ' would not be an unnatural one that he was thus invested for the very purpose of a sale. As to the testimony of Spencer, that he “ understood from both Vanderbilt and Demming that John Van *379 Pelt was part owner of the Adelaide." This is hardly evidence in a Court of Justice. It is the inference of the witness from conversation, instead of the conversation itself. It is not the evidence cf a fact; a charge of perjury could not be predicated upon it if false:,
Wood, another witness relied on to prove notice, beside the indefiniteness of his testimony, the conversation occurred nearly four years after the transaction; after also litigation had sprung up concerning the claim of the estate of Van Pelt. The suit in question was then pending against the respondents, and was ' naturally the subject of conversation and very easy of misap prehension. This witness also seems to have been in frequent communication with one of the parties in the Van Pelt interest. As a specimen of his testimony — “I asked Demming, I think, how the boat came to be sold here, and I think, Demming or Mayhew told me that a person by the name of Van Pelt owned her, who died in California. I don’t know that he said Van Pelt owned her, but that owing to Van Pelt’s death she was sold here.”
This witness also says: “I understood from conversation I had with Demming and Mayhew that they had knowledge of the interest of Van Pelt or of that estate before the boat was purchased.” We need not repeat this is not evidence. ■ This is all the testimony on the question of notice that deserves any comment. We have seen that Van Pelt in his lifetime, and his legal representatives since his death, have studiously concealed their interest in this vessel in the city of New York, and for this purpose caused her to be constructed and finished in the name of Vanderbilt; and, after the appointment' of another agent, Vail, to take charge of her after completion, the interest was still to be concealed in his name, thereby holding out a third person as the ostensible owner from the beginning of her construction, till the sale took place in August, 1854. And, although we do not say these parties who have thus enabled their agents to impose upon the purchaser should be estopped from setting up their interest as against ’him, if he purchases with knowledge, yet we think, under such circumstances, it is *380 the duty of the Court to scrutinize the evidence with more than ordinary attention — the proof of knowledge should be direct and unequivocal. The parties here seeking to prove the knowledge assume a position in contradiction to their past conduct, and are not entitled to the most favorable consideration of the Court. They are endeavoring to charge knowledge of a fact upon third persons or the public, when their interests become concerned, which they had down to the sale industriously concealed.
Some observations have been made upon the circumstances under which the vessel left the port of New York for the East, as tending to impeach the good faith of the purchasers. The proofs on this subject leave no such impression on the mind of the Court. The vessel had been purchased to fill a vacancy on a line of steamboats, and a delay of some ten days had occurred beyond the time fixed for her completion, which reasonably explains any impatience on the part of the purchasers in leaving' for the city of Boston. Certainly, the fear of arrest can hardly be inferred from their anxiety, as the vessel was equally exposed to one in the latter city as in the former.
Without pursuing the case further we are satisfied that, upon a fall examination of the proofs on the question of notice, they fail to impeach the bona fides of the purchasers, and as the legal title passed, the complainant has failed to. establish any right to relief; and, we may add, we are not sorry that we have come to a conclusion in favor of the innocent party who has acted upon the evidene of the legal title of the party from whom the purchase was made against the other innocent party, who had not only been instrumental in furnishing this evidence but has industriously concealed his own, and thus turned the equity of the case against him.
The decree below reversed!