## J. W. MOORE v. W. J. WILLIAMS ET AL.

### Decided April 10, 1901.

**1.—Partnership—Existence a Question for Jury—Participation in Profits.**

Where plaintiff's evidence tended to show a partnership between defendants by virtue of participation in profits, the question of whether there was such a partnership should have been submitted to the jury, and a peremptory instruction in defendants' favor on that issue was error. See evidence held to raise such an issue of partnership in a case where the defendant in whose name the business was transacted had undertaken a contract for the construction of a waterworks system, and the other defendants advanced the necessary money on an agreement to share in the profits.

**2.—Same—Pleading—New Cause of Action.**

Where plaintiff brought suit against defendants, alleging a partnership between them, and the partnership was denied by them, a supplemental petition alleging liability on the theory of principal and agent, in case the partnership should not be found to exist, did not set up a new cause of action.

**3.—Same—Varying Written Contract.**

Nor was the allegation in such supplemental petition of liability on the part of all the defendants, on the theory that the defendant who alone signed the notes sued on was agent for the others, an attempt to vary by parol the contract as expressed by the notes.

**4.—Same—Partnership in Name of One Member.**

If defendants were partners doing business under the name of one of them, and the notes sued on were executed by and in the name of that partner for the benefit of the firm, all the partners were liable thereon.

Appeal from Dallas.    Tried below before Hon. Richard Morgan.

*James P. Brown* and *T. L. Camp,* for appellant.

*George H. Plowman,* for appellees.

NEILL, ASSOCIATE JUSTICE.—On November 12, 1895, J. W. Moore brought suit against W. J. Williams, T. J. Oliver, and R. C. Storrie on two negotiable promissory notes, payable to the appellee, for $500, each of which was executed on the 16th day of July, 1892, and was payable respectively on the 15th and 31st of August, 1892, and each was signed "W. J. Williams."

It was alleged in plaintiff's petition that on the 1st day of January, 1892, the defendants were partners in the construction of a system of water, light, and power works in the city of Denton, Texas, for the Denton Water, Light and Power Company, under the firm name of W. J. Williams, and that such partners, under said firm name, constructed and established said system of waterworks, and that the partnership continued until on or after the 1st of January, 1893.    That on the 13th of February, 1892, the defendants, acting under the firm name of W. J. Williams, entered into a contract with plaintiffs to make excavations and erect necessary buildings, lay foundations and lay certain pipes necessary in the construction of said works, and that the plaintiff, between the 13th day of February, 1892, and the 16th day of July, 1892,

performed all of said work in accordance with said contract, and that in part consideration for payment for the work and services so performed and rendered by the plaintiff in pursuance of said contract, the defendants, under their firm name of W. J. Williams, executed the two promissory notes sued upon.

Oliver and Storrie answered by a general denial, and specially denied under oath the existence of the alleged partnership between them and Williams, and any authority of Williams to execute for them the notes sued on. They specially averred under oath that the contracts of Williams with the Denton Water, Light and Power Company, and with the plaintiff Moore, were entered into by Williams, and the work thereon partly performed by Moore before they (Oliver and Storrie) had any connection with the matter, and that the work was done by Moore for Williams at his request alone, under the obligations entered into between Moore and Williams long before they had any business relations with Williams; that credit for doing said work was given by Moore to Williams alone, and whatever notes were given were taken by Moore from Williams for the demand of Moore upon him, and that Moore accepted the notes of Williams alone, and never made any demands upon them from the 16th day of July, 1892, until February, 1894, just prior to the institution of this suit. That on the 13th day of February, 1892, Moore entered into a contract with Williams to do certain work in the construction of the Denton waterworks, and entered upon the performance of said work for Williams; that on the 19th of March, 1892, Oliver and Storrie agreed to loan Williams an indorsed paper for him for material which he agreed to repay them on the 1st day of July, 1893, with interest at 10 per cent; that as their security for said loan Williams assigned to them the bonds and stock of the Denton Water, Light and Power Company, and, as a bonus on said loan, agreed to give them two-thirds of the capital stock and bonds; that they were never partners in the construction of said waterworks; had no interest in its profits; did not share the losses; that there was no community profits between them and Williams; that they never ratified any contract or obligation made by Williams to Moore at any time, or in any manner assumed or agreed to pay the same; and that the notes sued on were executed without their knowledge or consent, and were never adopted or ratified by them, and that they never knew of the existence of said notes until 1894, a short time before this suit was brought.

On November 12, 1896, W. J. Moore filed his first supplemental petition, in which he alleged that if Oliver and Storrie were not partners with Williams in the construction of the Denton waterworks, that the works were actually constructed by T. J. Oliver and Robert Storrie, under the name of W. J. Williams, who was their agent in the construction under a contract with Williams, who was to receive one-third of the net profits, and that under said contract Moore was employed to lay the pipes, etc., and that Williams was authorized by Oliver and Storrie to employ plaintiff to do the work, and as their agent to execute said notes

in his own name in payment therefor. He prayed, in the event Oliver and Storrie were not partners of Williams, that he have judgment against them as principals on said notes.

To this supplemental petition Oliver and Storrie specially excepted, upon the grounds (1) that it set up a new cause of action, which accrued more than four years before filing of the same; and (2) that the notes were negotiable, and were executed by Williams after the performance of the work, and sought to vary the terms of the instrument by parol. These exceptions were sustained.

The case was tried before a jury, and after all the evidence was heard, the court peremptorily instructed the jury as follows: "Upon the uncontroverted testimony in this case, the plaintiff is entitled to a verdict against the defendant, W. J. Williams, for the debt herein sued for, but he is not entitled to recover anything against the defendants, R. C. Storrie and T. J. Oliver. You will therefore return the following verdict: 'We the jury find for the plaintiff against the defendant, W. J. Willaims, the sum of $1897.50, and we find for the defendants, R. C. Storrie and T. J. Oliver.'" From the judgment in favor of Storrie and Oliver, entered upon the verdict thus instructed, Moore has appealed to this court.

As we have concluded to reverse the judgment of the District Court, we deem it necessary, before passing upon the assignments of error, to state, without any comment thereon, the substance of the testimony adduced upon the trial:

It is uncontroverted that on the 7th day of February, 1892, a contract was entered into which, upon its face, purports to have been made between W. J. Williams and the Denton Water, Light and Power Company, by which the former agreed to construct for the latter the waterworks system for the city of Denton. Under the contract Williams was to receive in part payment for constructing the system $33,000 of the first mortgage bonds of the company and $31,000 of its capital stock. On the 13th day of February a contract was made which purports to be between W. J. Williams and J. W. Moore, by which the latter agreed to make excavation, erect the necessary buildings, lay foundations and certain pipes necessary for the construction of said system of waterworks, and Moore, between the 13th of February, 1892, and the 16th of July, 1892, performed all of his work in accordance with said contract. On the 16th day of July, 1892, in part consideration and payment of the work and services performed by him in pursuance of said contract, the notes sued upon were signed by W. J. Williams and delivered to appellant. Storrie and Oliver agreed and did furnish Williams the money, not exceeding $24,000, necessary to carry out and complete the contract with the Denton Water, Light and Power Company, which Williams agreed to repay on July 1, 1893, with 10 per cent interest. To secure them with the stock and bonds paid to Williams by the company, and after the works were finished, and the money and interest claimed by Storrie and Oliver to be thus loaned was repaid them by Williams, the

stock and bonds were to be equally divided between W. J. Williams, R. C. Storrie, and T. J. Oliver. It is testified by appellants that this agreement was not made until the 19th day of March, 1892, and that they had no connection with Williams' contract with the company, and that the one-third of the stock and bonds each of them was to receive in addition to the money loaned, and the 10 per cent interest thereon, was purely a bonus which they were to receive for letting Williams have the money. The mortgage bonds and capital stock of the company, when paid Williams, were turned over by him to T. J. Oliver, who executed to him the following receipt and agreement:

"Dallas, Texas, August 23, 1892.—Rec'd of W. J. Williams, thirty-three thousand dollars of first mortgage bonds of Denton Water, Light and Power Co., of Denton, Texas, the same being delivered to me for safe keeping until sold, and when sold the proceeds to be applied to the payment of outstanding notes for cash and material used in construction of the waterworks and electric plant at Denton. The remainder, whatever it may be, to be divided equally between W. J. Williams, R. C. Storrie, and T. J. Oliver. (Signed)   T. J. Oliver."

"Dallas, Texas, Aug. 23, 1892.—Rec'd from W. J. Williams ($31,000) thirty-one thousand dollars of the capital stock of the Denton Water, Light and Power Co., to be held by me in trust for the benefit of W. J. Williams, R. C. Storrie, and T. J. Oliver, and when all notes are paid and accounts settled, then the stock to be divided equally between the above named parties. In the meantime power is vested in W. J. Williams until a division of the stock is made to vote the entire stock. (Signed) T. J. Oliver."

These instruments were executed before the contract to construct the waterworks system was fully performed. The plant, upon the evidence, does not seem to have been completed until some time about July, 1893. There was testimony that Oliver stated about that time that he and Storrie were to furnish the money to construct the waterworks, and after the cost of construction was paid, he, Storrie, and Williams were each to receive one-third of the remaining bonds and stock; and that this statement of Oliver was made in the presence of Storrie and not denied by him. Oliver and Storrie and Williams each denied that either Oliver or Storrie had anything to do with the contract to construct the system. The records of the Denton Water, Light and Power Company show that T. J. Oliver holds $33,000 of the company's capital stock as trustee for nonresident stockholders, and that one J. C. Critt was trustee of the resident stockholders of the amount of $7000. Neither Oliver nor Storrie resides in Denton, but during the construction of the waterworks Mr. Oliver visited that city.

If this testimony tends to establish the partnership as alleged by appellant, then the logical sequence is that the court erred, as is assigned by appellant, in peremptorily instructing the jury to return a verdict in favor of the appellees.

In Meehan v. Valentine, 154 United States, 611 (Book 36 L. Ed., 836), Mr. Justice Gray, after an exhaustive review of the authorities, both English and American, for the purpose of determining the existence of a partnership, says: "In the present state of the law upon this subject, it may perhaps be doubted whether any more precise general rule can be laid down than * * * that those persons are partners who contribute either property or money to carry on a joint business for their common benefit, and who own and share the profits thereof in certain proportions. If they do this, the incidents or consequences follow that the acts of one in conducting the partnership business are the acts of all; that each is agent for the firm, and for the other partners; that each receives part of the profits as profits, and takes part of the fund to which the creditors of the partnership have a right to look for the payment of their debts; that all are liable as partners upon contracts made by any of them with third persons, within the scope of the partnership business; and that even an express stipulation between them that one shall not be so liable, though good between themselves, is ineffectual as against third persons. And participating in profits is presumptive, but not conclusive, evidence of partnership." If there is community of profits, the partnership follows. Community of profits means a proprietorship in them, as distinguished from a personal claim upon the other associates. In other words, a property right in them from the start in one associate as much as in the other. Bates on Part., sec. 30; Pars. on Part., sec. 54. Stipulating for a compensation in proportion to the profits, or payable out of them, will not confer the privileges or impose the liabilities incident to a partnership, unless it confers a jus in re, as distinguished from a demand or chose in action. The way in which profits are to be shared is the essence of the matter, and when the right to profits arises by virtue of an express contract, and does not flow from the relation of the parties, the right exists qua debt and not by virtue of a partnership. Lindl. on Partn. (Wentw. ed., p. 3, note 2); Pleasants v. Fant, 22 Wall., 116. The reason for the distinction is that where a share of the profits earned under an agreement is taken by one because he is the owner of a proportionate part of the whole, and not because his associates owe him a debt of that amount, the parties are necessarily mutual agents, and hence partners. This is because one can not become ipso facto the owner of profits earned by another, unless that owner is his agent in earning those profits. On the other hand, where a share of the profits earned under an agreement is merely a debt of personal claim by one party against his associates, growing out of services rendered, or the use of property, the parties are not mutual agents, and hence not partners. This is because if the parties were mutual agents, the profits earned by one of them would necessarily belong ipso facto to all of them as principals, which is contrary of the hypothesis. If a party who himself earns profits is not entitled to them or any part of them as owner, but only as a debt due from another, it must be because he earned them in the

capacity of employe or agent of that other solely, and not jointly for himself; and the relation is that of principal and agent or master and servant, and not that of partnership. George on Part., p. 50, and authorities cited in note 145.

In Southern Fertilizing Company v. Reames, 105 North Carolina, 283, 11 Southeastern Reporter, 467, it is held that in an agreement whereby one person advances the capital and the other contributes serves of a joint undertaking, the capital to be paid out of the stock, and the balance, after payment of expenses, to be equally divided as profits between the parties, constitute a partnership notwithstanding the fact that the one advancing the capital was to have interest on the money advanced. See also Gentry v. Singleton (Ind. T.) 61 S. W. Rep., 990, and authorities cited.

In Bloxham v. Pell, cited in 2 W. Blackford, 994, an outgoing partner became entitled to be paid by the continuing partner a certain sum of money with interest at 5 per cent, and also an annuity of £200 a year for six years in lieu of profits to the trade. The plaintiff sued him for a debt contracted by the firm after the dissolution. And Lord Mansfield held the defendant liable, on the ground that the agreement was a device to make more than a legal interest of money, and if it was not a partnership, it was a crime, and it should not lie in the defendant Pell's mouth to say it was usury, and not a partnership. This holding, however, we think should be taken in arguendo, as applicable to the facts in the case under consideration, rather than as a principle of law to be considered in determining the question of partnership.

When the testimony is considered in the light of these well established principles of law, we think, to say the least of it, that it tends to establish a partnership as alleged in appellant's petition; and, as the question of partnership is one of fact to be determined under the law from the evidence by the jury, we are of the opinion that the trial judge erred in withholding such question of fact from them and determining it himself.

In our opinion the matters plead by appellant in his supplemental petition did not set up a new cause of action. The cause of action alleged in both pleadings was by the same plaintiff against the same parties, upon the same promissory notes. In the original petition, appellees were sought to be held liable upon the notes as principals, upon the theory that they were Williams' partners in transacting the enterprise for which the debt evidenced by the notes was incurred. In the supplemental petition they were sought to be held liable, in the event they were not partners with Williams, upon the ground that the debt evidenced by the notes were incurred by them through their agent, W. J. Williams, who, as such agent, had their authority to contract the debt and execute the notes, in his name for them in its settlement and as the law as expounded by the highest court of this State recognizes no personality in a partnership other than that of the persons who compose it, and renders such persons jointly and severally liable for debts contracted in partnership business (Wiggins v. Blackshear, 86 Texas, 665), the liabil-

ity of appellees on the notes would be the same, whether made by them through the agency of a partnership or the agency of an individual.

Nor do the matters alleged in the supplemental petition seek to vary by parol a written contract. It simply alleges matters for the purpose of authorizing the plaintiff to prove the true nature of the contract, and who were the real parties to it; and in no sense can the pleading be taken as an effort upon the part of the appellant to vary the contract as expressed by the notes. Parol testimony is generally admissible for the purpose of explaining and showing the true nature and character of a contract in writing, and who are the real parties to it.

The rule which renders partnerships liable on bills and notes executed by one member of the firm only applies to firms engaged in commercial business (Randolph on Commercial Paper, section 505), and can have no application to this case if the facts are as alleged by appellant. For if it were true that Williams, Storrie, and Oliver were partners, and that "W. J. Williams" was the name of the partnership, and the notes sued on were given in such name for the benefit of the firm, all the partners would be liable on them. Rand. on Com. Paper, 2 ed., sec. 130d, and cases cited in note.

On account of the errors indicated, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*